UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

Plaintiff,

vs.

**DUTCHY'S GOURMET SAUSAGES, INC,**
**a Florida for-profit corporation,**

Defendant.

_____/

## **COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendant DUTCHY'S GOURMET SAUSAGES, INC, a Florida for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This also is an action for declaratory and injunctive relief, damages, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.* ("Rehab Act").

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA and the Rehab Act.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.  .

1

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").  Plaintiff also is expressly authorized to bring this case as an otherwise qualified individual with a disability under the Rehab Act, 29 U.S.C. §§794(a)(2) and 794(b)(3)(A), and under Section 505-f the Rehab Act which enforces Section 504 of the Rehab Act, 29 U.S.C. §§794 and 794a, incorporating the rights and remedies set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et seq*.

5.      Plaintiff is and at all relevant times has been a visually impaired and physically disabled person who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). Because of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and has limited use of his left hand.  Further, because of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and limited vision in the other eye.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h).  Plaintiff also is an otherwise qualified individual with a disability who has been denied the benefits of a program or activity receiving federal financial assistance and is thus covered by the Rehab Act, 29 U.S.C. §794(a) and (b).  Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or the

recipients of federal financial assistance and/or their respective and associated websites are in compliance with the ADA, the Rehab Act, and any other applicable disability laws, regulations, and ordinances.

6.     Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Defendant is a Florida for-profit corporation authorized to do business and doing business in the State of Florida.  Defendant owns, operates, and/or controls a specialty food store located at 401 South State Road 7, Plantation, Florida that Plaintiff had patronized and intended to patronize in the near future.  Defendant also owns, leases, leases to, and/or operates a business in South Florida that is the recipient of federal financial assistance for the company as a whole within the meaning of the Rehab Act, 29 U.S.C§794(b)(3)(A)(i).  See Exhibit "A" attached hereto.

8.     Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.     Plaintiff frequently accesses the internet.   Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns and operates a specialty food store under the name "Dutchy's Gourmet Sausages"  The Dutchy's Gourmet Sausages store is open to the public. As the owner, operator, and/or controller of this store, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is a store open to the public, it is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulations, 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant also controls, maintains, and/or operates an adjunct website, https://www.dutchyssausages.com (the "Website").   One of the functions of the Website is to provide the public information about Defendant's store.   Defendant also sells to the public its food products and merchandise through the Website, which acts as a critical point of sale for Defendant's food products and merchandise that are also available for purchase in and from Defendant's physical store.            13.     The Website also services Defendant's physical store

4

by providing information on its available food products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to secure information about Defendant's physical store, purchase food products and other merchandise also available for purchase from and in the physical store, and purchase gift cards for use online and in the physical store, the Website is an extension of, and gateway to, the same goods, services, privileges, and advantages as are available in and from Defendant's physical store, which is a place of public accommodation under the ADA.  As an extension of and necessary service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar location and business. Furthermore, the Website is a necessary service, advantage, and privilege of Defendant's physical store in that, as a point of sale for Defendant's store, it enables users of the Website to make online purchases of Defendant's food products and merchandise that are also available for purchase in and from its physical store.

15.     Because the public can view and purchase Defendant's food products and merchandise through the Website that are also offered for sale in and from Defendant's physical store, thus having the Website act as a point of sale for Defendant's food products and merchandise sold in and from the physical store, and purchase gift cards for use in physical store, , the Website is an extension of, and gateway to the physical store, which is a place of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E).  As such, the Website is a necessary service, privilege, and advantage of Defendant's brick and mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and

must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded to the non-visually disabled public both online and in the physical store.

16.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website.  Since the Website is open to the public through the internet and is a point of sale for food, merchandise, and gift cards sold at, in, and through Defendant's physical store, the Website is a necessary services, privilege, and advantage, of Defendant's brick and mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with visual or physical disabilities, and must not deny those individuals the full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical store.

17.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical store, and to check store hours and product pricing, purchase food and merchandise, and purchase gift cards for use online and in the physical store..  In the alternative, Plaintiff intends to monitor the Website in the near future, as a tester, to ascertain whether it has been updated to interact properly with screen reader software.

18.     The opportunity to shop and pre-shop Defendant's food and merchandise, , and purchase gift cards for use both online and in the physical store from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a physically and visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals using screen reader software.

19.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits, and to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare products, product features, services, discounts, promotions, and prices.

20.     During the month August 2021, Plaintiff attempted on a number of occasions to utilize the Website to browse through the menus, food products, merchandise, services, and online offers to plan his store visits, to educate himself as to the goods, merchandise, services, sales, discounts, and promotions being offered, to learn about the brick and mortar store, to check store hours, and to check food and merchandise pricing with the intent to make a purchase through the Website or from Defendant's store.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as himself, who use screen reader software to access and navigate company websites.

21.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites.  However, Defendant's Website contains access barriers that prevent its free and full use by blind and visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

a.   Return to home page/company logo button is mislabeled;

b.   Submenu is inaccessible when navigating with a keyboard;

c.   On the home menu there are icons such as shop online, shop in store, grab & go, take out, dine in, and catering. All of these images are mislabeled as "link";

d.   Throughout the website there are blocks of text that are not labeled to integrate with the screen reader. The cursor skips over this information and navigates to the next available header, button, or link; and

e. Social media icons are mislabeled.

22.     The Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the Website.

23.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

24.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, services, and promotions, as provided on the Website and at the physical store to the non-visually disabled public.

25.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical store and to use the Website as a necessary extension, service, privilege, and advantage of the physical store, but he is presently unable to fully do so, as he is unable to effectively communicate with Defendant's physical store due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using scree reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe blindness and visual disability and the Website's access barriers.  Thus, Plaintiff, and others who are blind and visually disabled, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because the Website clearly provides support for and is directly connected with Defendant's retail store for its goods, services, operation, and use, and thus is a necessary extension, service, privilege, advantage, and accommodation of Defendant's brick and mortar store for the purchase of Defendant's food products and merchandise, the Website must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical store, which is a place of public accommodation subject to the requirements of the ADA. In addition, because Defendant is a recipient of federal funds to the company as a whole, Defendant is also subject to the requirements of the Rehab Act and must not discriminate against qualified or otherwise qualified individuals with disabilities in any and all of its "programs and activities", including the Website.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

34.     Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

35.     Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37.     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals who want the safety and privacy of purchasing Defendant's food and merchandise offered on the Website from their homes.

38.     Thus, Defendant has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, accommodations, programs, and activities provided by and through the Website in contravention of the ADA and the Rehab Act.

39.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.  Likewise, under the Rehab Act, public

accommodations and companies that receive federal financial assistance as a whole must not discriminate against disabled persons and are required to make all the facilities, programs, or activities they operate, including their websites, fully and readily accessible to persons with disabilities.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping Websites, such as the Website at issue in the instant action.  In addition, Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects and activities receiving federal assistance " ... be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3).

41.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

42.     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

43.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA and the Rehab Act is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

48.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns, controls, and/or operates the physical store and the connected Website..

50.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's store, purchase food products and merchandise that is also available for purchase in and from the physical store, and purchase gift cards for use both online and in the physical store.  The Website thus is an extension of, gateway to, and necessary service, privilege, and advantage of Defendant's physical store.  Further, the Website also serves to augment Defendant's physical store by providing the public information on the location of the store and by educating the public as to Defendant's available products sold and services offered through the Website and in the physical store.  The Website thus is necessary for Plaintiff to fully and equally enjoy and have access to all of the goods, services, privileges, and advantages being offered by Defendant both online and in its physical store.

51.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

55.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on its Website and in its physical store in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq.*

56.     The Website was subsequently visited by Plaintiff's expert in August 2021, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed.  Defendant thus has made insufficient material changes or improvements to the Website to enable its full use, enjoyment, and accessibility for blind and visually disabled persons such as Plaintiff.  Defendant also has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website a conspicuous and effective "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a functional, viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "B" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

57.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

60.     Defendant has violated the ADA – and continues to violate the ADA – by denying access to the Website and hence its connected physical store by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

61.     The ADA require that public accommodations and places of public accommodation ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website that is an extension, service, privilege, and advantage of, and critical and necessary point of sale for, Defendant's brick and mortar store, Plaintiff has suffered an injury in fact by being denied communication with and full access to and enjoyment of the goods, services, privileges, and advantages of Defendant's physical store.

67.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with visual disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered in Defendant's physical store through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of learning about and locating Defendant's physical store and becoming informed of and purchasing Defendant's food and merchandise online and from the physical store, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and from the physical store.

69.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and

effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop

---

[1]  or similar.

programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

## COUNT II – VIOLATION OF THE REHABILITATION ACT

70.     Plaintiff re-alleges paragraphs 1 through 47 and 56 through 59 as if set forth fully herein.

71.     As more specifically set forth above, Defendant has violated the Rehab Act by failing to interface the Website with software utilized by visually disabled individuals. Thus, Defendant has violated the provisions of the Rehab Act either directly or through contractual,

licensing, or other arrangements with respect to Plaintiff and other similarly situated individuals solely by reason of their disability:

a)      By excluding Plaintiff from participation in and denying him the benefits of or subjecting him to discrimination under any program or activity receiving federal financial assistance, Defendant has violated the Rehab Act;

b)      Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance " ... be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. Section 701 (c)(3);

c)      Defendant is a recipient of federal financial assistance as a whole bringing it under the Rehab Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities";

d)      Section 504 of the Rehab Act prohibits recipients of federal funding as a whole from discriminating against disabled persons and requires that facilities, programs, or activities operated by a federally funded entity be readily accessible to persons with disabilities;

e)      The Rehab Act defines "program or activity" as all of the operations of the entire corporation, partnership, or other private organization, or sole proprietorship which receives federal financial assistance as a whole. Defendant's Website and its content is a "program or activity" within the meaning of the Rehab Act, 29 U.S.C. §794(b)(3)(A)(i);

f)      Plaintiff was denied access to Defendant's Website solely by reason of his disability. This denial of access to Defendant's "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity, and denied

Plaintiff the benefits of the Website, a service available to those persons who are not blind. As of this filing, the Website remains inaccessible to qualified or otherwise qualified persons;

g)      The international website standards organization, WC3, has published widely-accepted guidelines ("WCAG 2.0 and WCAG 2.1 AA") for making digital content accessible to individuals with disabilities. These guidelines have been endorsed the United States Department of Justice and by Federal Courts and the United States Access Board; and,

h)      Defendant has engaged in unlawful practices in violation of the Rehab Act since it launched the Website. These practices include, but are not limited to, denying Plaintiff, an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of communication barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by Defendant.

72.      Defendant has acted with deliberate indifference to the applicable provisions of the Rehab Act as to the unlawful practices described herein because Defendant was and is fully aware of the inaccessible features of its Website and has failed to remediate the Website to make it equally accessible to persons with visual disabilities. Defendant knew that harm to a federally protected right was substantially likely, yet and it failed to act on that likelihood when it failed to remediate its Website.  Defendant knew this, and on information and belief, a person with authority with Defendant to order the remediation of the Website made a deliberate choice not to remediate and to continue to offer the inaccessible Website to its customers and potential customers knowing that the Website was, and continues to be, inaccessible to the blind and visually disabled.

73.      Plaintiff would like to be a customer at Defendant's brick and mortar store but before he goes to Defendant's store, he would like to determine what is available for his

purchasing, what promotions are being offered, what services are being offered, and what new items are currently available.  In that regard, Plaintiff continues to attempt to utilize the Website and/or plans to continue to attempt to utilize the Website on a regular basis to make selections for purchasing and setting appointment for catering services online or in the stores.

74.     Plaintiff is continuously aware of the violations at Defendant's Website and is aware that it would be a futile gesture to attempt to utilize the Website as long as those violations exist unless he is willing to suffer additional discrimination.

75.     Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's Website. By continuing to operate the Website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the benefits of -Defendant's programs and activities available to the general public. By encountering the discriminatory conditions at the Website and knowing that it would be a futile gesture to attempt to utilize the Website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same store or Website readily available to the general public and is deterred and discouraged from doing so. By maintaining a website with access and Rehab Act violations, Defendant deprives Plaintiff the equal access to, and same participation in and benefits of its programs and activities as the non-visually disabled public.

76.     Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until the Defendant is compelled to comply with the requirements of the Rehab Act.

77.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the Rehab Act with respect to this Website as described

above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the Rehab Act by the Defendant. Plaintiff desires to access the Website to avail himself of the benefits, therein, and/or to assure himself that this Website is in compliance with the Rehab Act so that he and others similarly situated will have full and equal enjoyment of the Website without fear of discrimination.

78.     The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the Rehab Act as requested herein.

79.     Plaintiff is without adequate remedy at law and is suffering irreparable harm based on the facts alleged hereinabove.

80.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs, and litigation expenses from the Defendant pursuant to the Rehab Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.     A declaration that determines that Defendant's Website at the commencement of the subject lawsuit is in violation of the Rehabilitation Act;

B.     A declaration that Defendant's Website continues to be in violation of the Rehabilitation Act;

C.     A declaration that Defendant has violated the Rehabilitation Act by failing to monitor and maintain its Website to ensure that it is readily accessible to and usable by persons with visual disabilities;

D.      Issuance of an Order directing Defendant to alter its Website to make it accessible to, and useable by, individuals with visual disabilities to the full extent required by the Rehabilitation Act;

E.      Issuance of an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective and remedial procedures;

F.      Issuance of an Order directing Defendant to continually update and maintain its Website to ensure that it remains fully accessible to and usable by visually disabled individuals;

G.      An award to Plaintiff of his compensatory damages for Defendant's willful and deliberately indifferent violations of the Rehab Act;

H.      Award Plaintiff his attorney's fees, costs, and litigation expenses pursuant to 29 U.S.C. §794a; and

I.      Award such other relief as the Court deems just and proper, and/or is allowable under the Rehabilitation Act.


DATED:  November 5, 2021

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


By:___*s/ Roderick V. Hannah*___
          RODERICK V. HANNAH
          Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By:___*s/ Pelayo M. Duran*___
          PELAYO M. DURAN
          Fla. Bar No. 0146595